**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**BILLINGS DIVISION**

FILED

NOV 17 2014

Clerk, U S District Court
District Of Montana
Billings

SHARON E. HESER,

          Plaintiff,

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

          Defendant.

CV 14-39-BLG-SPW

OPINION AND ORDER

Sharon Heser ("Heser") filed this lawsuit under 42 U.S.C. § 405(g) seeking

judicial review of the Defendant Carolyn Colvin, Acting Commissioner of Social

Security's ("the Commissioner") decision to deny her application for disability

insurance benefits. (Doc. 1). Heser moved for summary judgment on July 8,

2014. (Doc. 9). On September 8, 2014, Magistrate Judge Carolyn Ostby issued

her Findings and Recommendations recommending that this Court grant Heser's

motion, reverse the Commissioner's decision, and remand for payment of benefits.

(Doc. 14). The Commissioner filed timely Objections to the Findings and

Recommendations on September 15, 2014. (Doc. 15). The Commissioner is

entitled to a de novo review of the findings and recommendations to which she objects.   28 U.S.C. § 636(b)(1).

## I.   BACKGROUND

Magistrate Judge Ostby thoroughly laid out the procedural history of this matter and a summary of the administrative record in her Findings and Recommendations.   As this history is well-known to the parties, this Court adopts Magistrate Judge Ostby's description of the background facts, administrative record and procedural history.   A short summary of relevant events is laid out below.

### A.   Procedural History

Heser filed applications for disability and supplemental social security income benefits under the Social Security Act in 2008.   (AR 202, 307-21).   Heser claims her conditions rendered her unable to work since August 14, 2002.   (*Id.*)   She amended this date to May 23, 2005.   (Doc. 9 at 15).   Heser claimed an inability to work due to several conditions, including cervical, thoracic, and lumbar back pain, fibromyalgia, bilateral carpal tunnel syndrome, plantar fasciitis, sleep apnea, obesity, depression, and anxiety disorder.   (AR 419-26).

Heser's request was denied initially and upon reconsideration.   (AR 221-26, 228-31).   On September 1, 2010 an Administrative Law Judge ("ALJ") held a hearing.   (AR 34-123).   On December 22, 2010, the ALJ issued a written decision

denying Heser's claims. (AR 202-09). Heser sought review of the ALJ's decision by the Appeals Council. (AR 261). On April 16, 2012, the Appeals Council granted Heser's request for review, vacated the ALJ's decision, and remanded Heser's request. The Appeals Council instructed the ALJ to, among other instructions, re-evaluate Heser's treating physicians' opinion evidence, evaluate her mental impairment and the effect of her obesity, and consider the credibility of non-medical source evidence. (AR 216-218).

On September 11, 2012, the ALJ held a second hearing on Heser's claims. (AR 124-94). On October 22, 2012, the ALJ issued a second written decision denying Heser's claims. (AR 15-27). On January 24, 2014, after the Appeals Council denied Heser's request for review, the ALJ's decision became final for purposes of judicial review. (AR 3-5). 20 CFR §§ 404.981, 416.1481 (2013).

## B.    ALJ'S Written Decision

The ALJ found that Heser last met the insured status requirements through December 31, 2007. (AR 17). Heser did not engage in substantial gainful activity from the alleged date of onset, May 23, 2005. (*Id.*) The ALJ found that Heser had the following severe impairments: carpal tunnel syndrome; fibromyalgia; status-post discectomy and fusion at C5-6; status post-laminectomy at L5-S1; obesity; and plantar fasciitis. (*Id.*) He concluded that Heser did not have an

impairment or combination of impairments that met one of the listed impairments under the Act. (AR 18-19). Affording Heser's treating physicians' opinions "little weight," the ALJ rejected the limitations they recommended and determined that Heser has a residual functional capacity to perform light work, with certain limitations. (AR 20). He concluded that her residual functional capacity allowed her to perform past relevant work as a billing clerk and an insurance agent. (AR 26). As a result, the ALJ found that Heser was not disabled from May 23, 2005, to the date of the decision. (AR 27).

## II.    LEGAL STANDARD

### A.    Overview

To qualify for disability benefits under the SSA, an applicant is required to show two things. First, she must show that she suffers from a medically determinable impairment that can be expected to result in death, or that has lasted or can be expected to last for a continuous period of twelve months or more. *See* 42 U.S.C. § 423(d)(1)(A). Second, she must show that the impairment renders her incapable of performing the work that she previously performed, or any other substantially gainful employment that exists in the national economy. *See* 42 U.S.C. § 423(d)(2) (A).

Regulations promulgated pursuant to the SSA specify the process that the

Social Security Administration uses to determine whether an applicant is disabled. 20 C.F.R. § 404.1520. At step 1, the agency considers whether the claimant is presently working in any substantial gainful activity. If so, she is not disabled. If not, the agency considers whether the claimant's impairment is severe in Step 2. If not severe, she is not disabled. If the impairment is severe, the agency then considers in Step 3 whether the impairment meets or equals a specific impairment listed in the Listing of Impairments. If so, the applicant is disabled. If not, the agency considers at Step 4 whether the claimant is able to do any other work, including past work. If not, the claimant is disabled. If at Step 5 there are a significant number of jobs in the national economy that the claimant can do, the claimant is not disabled. 20 C.F.R. § 404.1520; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999). The burden at steps one through four rests on the applicant, but the burden at step five rests on the agency. *Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003). Applicants who are not disqualified at step five are eligible for disability benefits. *Id.*

## B. Standard of Review

An applicant may seek judicial review of a final agency decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). This Court's review is limited, however. A district court reviews de novo any part of a Magistrate Judge's Findings and

Recommendation to which there has been proper objections. Fed. R. Civ. P. 72(b)(3). A final decision may only be disturbed if the ALJ's findings of fact are based on legal error or are not supported by "substantial evidence in the record as a whole." *Schneider v. Comm'r of Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court must consider the record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion. *See Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews*, 53 F.3d at 1039. Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. *Id.*

## III. DISCUSSION

The Commissioner contends that the ALJ appropriately afforded Heser's treating physician, Dr. Scott Sears' opinions "little weight." (Doc. 15 at 3). The Commissioner also contends that substantial evidence supports the ALJ's decision

6

that Heser is not disabled. (*Id.* at 12). The Court finds that the ALJ erred by failing to afford Dr. Sears' opinion greater weight as a treating physician. The Court also finds the ALJ's opinion that Heser is not disabled is not supported by substantial evidence. This matter is reversed and remanded.

## A. The ALJ did not support his decision to discount Dr. Sears' opinion with specific and legitimate reasons.

In Social Security Disability cases, the Ninth Circuit distinguishes between opinions from three kinds of physicians: treating physicians, examining physicians who do not treat the patient, and non-examining physicians. *Lester v. Chafer*, 81 F.3d 821, 830 (9th Cir.1995). A treating physician's opinion generally carries more weight than a non-treating physician, and an examining physician has more weight than a non-examining physician. *Id.*

As a general matter, a "treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record." *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir.2001) (citing Social Security Ruling (SSR) 96–2p). Where a treating physician's opinion is not contradicted by another doctor, it may only be rejected for "clear and convincing reasons." *Lester*, 81 F.3d at 831. Where the treating physician's opinion is

contradicted by another doctor, however, the ALJ "may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

"An ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Brown*, 799 F.2d 1403, 1408 (9th Cir.1986). The ALJ cannot simply state that the medical opinions are not supported by sufficient objective findings, or are contrary to the preponderant conclusions mandated by the objective findings. *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir.1988).

Here, Dr. Sears opined that Heser was not a malingerer, had depression and her impairments would constantly cause pain severe enough to interfere with attention and concentration needed to perform even simple work tasks. (AR 758-60). Dr. Sears found she could walk half a block, sit 20-30 minutes, stand 20-30 minutes, and would need 5 to 10 minute unscheduled breaks hourly, needs to elevate her legs twenty percent of the day, and would be absent from work four or more days per month as a result of her impairments. (*Id.*) Dr. Sears specifically

stated that he found these limitations reasonable and likely based on his examinations and treatment. (*Id.* at 764).

Although Dr. Sears was Heser's treating physician, the ALJ gave his opinion "little weight." (AR 23). The Commissioner argues that the ALJ properly concluded that Dr. Sears' opinions deserved little weight because "most of Dr. Sears' treatment pertained to Heser's 'general maladies,'" and "Dr. Sears' notes contained insufficient evidence to support the limitations he found or that Heser reported." (*Id.* at 3-12).

### 1. Specific findings supporting Heser's limitations

Here, the ALJ gave Dr. Sears' opinion minimal weight, in part, because he found that Dr. Sears' "examinations of the claimant do not document specific findings that would support the limitations noted." (AR 24). However, the ALJ's conclusion is undermined by his own recitation of the evidence.

First, the ALJ determined there was a "paucity of medical evidence supporting a finding of disability" after citing the following medical evidence:

- Dr. Sears had diagnosed Heser with plantar fasciitis, injected her heel, prescribed additional injections and special boots to alleviate her symptoms, and noted her pain at an 8 out of 10;

- Dr. Sears' records confirmed positive Phalen's sign, an objective medical sign of carpal tunnel syndrome, reported that Heser experienced tingling and numbness that radiated into her fingers, and noted that Heser had

received cortisone injections and wore splints at night to help with her symptoms;

- Dr. Sears had diagnosed Heser with fibromyalgia after she had a cervical discectomy and fusion and a laminectomy that she aggravated in May 2006, for which she received epidural steroid injections and exhibited tenderness in her thoracic spine. (AR 22).

Despite the existence of the above medical evidence, the ALJ stated that, in his opinion, there was no objective medical evidence of Heser's disability, and Dr. Sears treatment was not "sufficient" to support Heser's limitations. (AR 24). The ALJ's opinion alone, however, is insufficient to call into question a treating physician's opinions. The ALJ's role as fact-finder imposes on him a duty to resolve conflicts in medical evidence. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992)). That role does not grant him a license to exercise his own, independent medical judgment in the absence of such conflict. *See Tackett*, 180 F.3d at 1102; *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975). The ALJ's lay opinion of what treatment should have been prescribed to Heser and what symptoms she should have exhibited if she were truly disabled is not a sufficient basis to discredit Dr. Sears' educated medical opinions. *Id.*

Next, the ALJ determined that Heser's limitations were not "supported" by Dr. Sears' medical notes. (AR 28); (*see also* Doc. 15 at 6). This Court finds that a

reasonable person could not come to this conclusion without impermissibly "cherry picking" records to support such a determination. *See Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability."); *Switzer v. Heckler*, 742 F.2d 382, 385–86 (7th Cir. 1984) ("[T]he Secretary's attempt to use only the portions [of a report] favorable to her position, while ignoring other parts, is improper.").

Notably, the ALJ relied only upon Heser's episodes of improvement and failed to recognize the portions of the records that reported her ongoing symptoms, physical limitations, and reasons for not pursuing treatment. (AR 22-24). For example, in support of his finding, the ALJ stated that Heser's "course of treatment has been conservative in nature," (AR 23), yet ignored the fact that Dr. Sears' notes reported that Heser took the "conservative" treatment route because she could not afford surgery or injections, (AR 646 (stating "She has responded to cortisone injections in the past. I asked her if she followed up with Dr. Curtis Settergren. She states, "I can't afford to.")), and ignored Heser's similar testimony. (*See* AR 156 (Q: "Has there ever been any talk of doing surgery on the hands? A: Yes but I can't afford it.").

The ALJ discounted Dr. Sears' finding that Heser lacked concentration needed to perform simple work tasks because Heser "studied for and passed the examination to become an insurance agent," but ignored her testimony that she had to take the test seventeen times over the course of six-months to a year before she passed. (AR 149-50). The ALJ cited the fact that Heser "worked part-time from January through April 2012," but ignored her testimony that she had to reschedule frequently due to pain and made only one sale (that her boss had already set up) and a total of $346 over four months. (AR 140).

More examples of cherry picking exist in the ALJ's consideration of her physical abilities. The ALJ said Heser's treatment records prove she improved when she was more "active" like "studying, taking a test, working and exercising," (AR 23, citing Ex. 29F), but he failed to note that during those "active" periods, she was taking six 325 mg tablets of hydrocodone (narcotic), 50 mg of Savella (fibromyalgia medication) and 10 mg of Flexeril (muscle relaxant) daily, and her pain complaints remained the same. (*Id.*) The ALJ found Heser was able to exercise, but ignored Heser's testimony that her "exercise" was stretching 15 minutes two times a day and attending aquatic classes, all which she testified she did to help alleviate her chronic pain. (AR 143, 165-66).

While recognizing that Heser's medications are helpful in controlling her pain, the ALJ held against her all the instances she was able to function, even though her alleged disability involves flare-ups of pain that can come and go. (AR 673). Further, he made no determination as to whether Heser's abilities ever strayed beyond the limitations described by Dr. Sears. This was error because "[o]ne does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). Taking all of the records into consideration, instead of those "cherry picked," this Court finds that a reasonable person could only accept that Heser is disabled. *Andrews*, 53 F.3d at 1039.

Moreover, none of these activities support a finding of nondisability. Heser's ability to carry out simple daily activities, exercise fifteen minutes twice a day and walk her dogs does not detract from Dr. Sears' disability finding and limitations. *See Vertigan*, 260 F.3d at 1050 ("[T]he mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability . . . . the fact that a claimant performs certain physical activities despite pain, for therapeutic reasons, does not mean that the claimant could concentrate on work or engage in a similar activity for a longer period of time); *Jordan v. Astrue*, 262 Fed. Appx. 843, 845 (9th Cir. 2008) (unpublished) (help with light household chores, completing some therapeutic exercises, and brief

13

self-employment does not refute claims of disability based pain); *Ligenfelter v. Astrue*, 504 F.3d 1029, 1038-39 (9th Cir. 2007) (brief, unsuccessful attempts to work are not inconsistent with disability).

### 2. Treatment for "general maladies" is not a proper basis to discount the weight of a treating physician's opinion.

As Magistrate Judge Ostby correctly noted, the fact that "most of Dr. Sears' treatment relates to general maladies unrelated to the allegations of disability" is an improper basis to discount Dr. Sears' opinion. *See Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007). On the contrary, Dr. Sears' opinion is entitled to greater weight because the longstanding treatment relationship between Heser and Dr. Sears shows that Dr. Sears formed his opinion for treatment purposes and not simply to facilitate obtaining benefits. *Id.* at 633-34; *Doyal v. Barnhart*, 331 F.3d 758, 763 (10th Cir. 2003).

Although Dr. Sears treated Heser's general issues like sinusitis and weight gain, he undisputedly treated her for conditions directly related to her disability claim for over seven years. (*See* AR 541-547, 637). He prescribed her pain medication in correspondingly increasing amounts over the same time frame. *Id.* Because the "primary function of medical records is to promote communication and recordkeeping for health care personnel – not to provide evidence for disability

14

determinations," the Ninth Circuit does not require that a medical condition be mentioned in every report to conclude that a physician's opinion is supported by the record.  *Orn*, 495 F.3d at 633 (citing 20 C.F.R. § 404.1527(d)(2)).  This Court finds that, when viewed in its entirety (rather than cherry-picked), Dr. Sears' records provide ample support for the limitations he prescribed as a result of Heser's disability.  The fact that he treated her for other issues only enhances his credibility with regard to his assessment of her limitations.

### 3.     Conclusion

The two reasons the ALJ provided for rejecting Dr. Sears' opinions are insufficient.  The reasons are not "specific, legitimate reasons" that are supported by substantial evidence.  In fact, as noted above, the record contradicts them.  The ALJ erred by affording Dr. Sears' opinion "little weight."

### B.     The ALJ's opinion is not supported by substantial evidence.

The Commissioner asserts that Magistrate Judge Ostby erred by determining that the ALJ's decision is not based upon substantial evidence.  (Doc. 15 at 12). The Commissioner ignores severe problems with the ALJ's assessment and application of the evidence, however.  After incorporating these problems into the analysis, this Court finds that the ALJ's determination regarding Heser's disability (or lack thereof) is not supported by substantial evidence.

15

### 1. The ALJ Ignored Heser's Pain Complaints.

First, despite Heser's attorney's quantification of her case as "essentially a pain case,"(AR 41), the ALJ ignored the requirement to carefully evaluate all evidence bearing on the severity of Heser's pain and give specific reasons for discounting her testimony. When medical evidence shows a pain-producing impairment, the Social Security Administration must evaluate the intensity and persistence of the pain. *See* Social Security Administration, "How We Evaluate Symptoms, Including Pain," 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); "Policy Interpretation Ruling Titles II and XVI" Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements," Social Security Ruling 96-7p; *Lingenfeller*, 504 F.3d at 1035-38.

"As long as the individual has a medically determinable pain-producing impairment, the Social Security Administration and the courts may not reject the claimant's statements about pain solely because objective medical evidence does not substantiate those statements." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); *see also Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006)("The etiology of pain is not so well understood, or people's pain thresholds so uniform, that the severity of pain experienced by a given individual can be 'read off' from a medical report.") Accordingly, when a pain producing impairment exists and there is no evidence of

malingering, the claimant's testimony as to the degree of her pain may be rejected only with "clear and convincing reasons" for rejection. *Edler v. Astrue*, 391 Fed. Appx. 599, 600 (9th Cir. 2010).

Heser's diagnosis of fibromyalgia qualified as a pain producing impairment. *Morris v. Astrue,* 323 Fed. Appx. 584, 585 (9th Cir. 2009) (finding a claimant's fibromyalgia, sleep apnea, and obesity were "impairments that could reasonably be expected to produce the pain or other symptoms alleged). Dr. Sears specifically determined Heser had exhibited no signs of malingering, satisfying the second element. (AR 758-60). As a result, Heser did not have to show that her impairment could be expected to cause the severity of the pain she claimed as the ALJ suggested; she only had to show that her impairment could cause some degree of pain. *Vasquez v. Astrue*, 572 F.3d 586 (9th Cir. 2009). Nevertheless, the ALJ discounted her pain complaints because "the medical record does not describe the signs and symptoms consistent with a finding of disability." (AR 23). The ALJ erred in failing to offer "clear and convincing" reasons to reject Heser's pain claims.

## 2. The ALJ Relied Upon an Improper Hypothetical.

Another significant problem with the ALJ's nondisability finding was that it was predicated, in part, on hypotheticals the ALJ presented to the vocational expert which did not adequately reflect Heser's residual functional capacity assessment.

17

In fact, a careful examination of the hypotheticals and the vocational expert's responses proves that Heser is not capable of performing her prior work.

"If a claimant shows that he or she cannot return to his or her previous job, the burden of proof shifts to the [Commissioner] to show that the claimant can do other kinds of work." *Magallnes v. Bowen*, 881 F. 2d 747, 756 (9th Cir. 1989). When the burden shifts, the Commissioner must show that the claimant can perform other types of substantial, gainful work that exists in the national economy; specific reference should be made to realistic job opportunities. *Id.*

When the ALJ uses a vocational expert to meet this burden, the ALJ may pose hypothetical questions to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy. *Id.* Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant. *Id.* The vocational expert's opinion about a claimant's residual functional capacity has no evidentiary value and is fatally flawed if the assumptions in the hypothetical are not supported by the record. *Id.*

During Heser's second hearing, the ALJ posed a hypothetical question to the vocational expert, including the relevant portion set forth below:

[H]ypothetical number one is as follows --- the ability to walk, perhaps, 15 minutes at a time, or up to four blocks at a time; stand 20-30 minutes at a time, and be on one's feet, total, somewhere between two to four hours in an eight-hour day; **sit one to two hours at a time, and at least six hours, in an eight-hour day**; lift 20 pounds on an occasional basis, 10 pounds on a frequent basis[.] . . . . With that set of limitations, do you believe the Claimant would be able to do any of her past work?

(AR 184). The vocational expert responded that with these limitations, Heser could perform her past relevant work as a billing clerk and payroll clerk and also met the requirements to be an insurance agent. (AR at 185). The ALJ submitted another hypothetical where Heser was able to get up and alternate sitting and standing, but was still required to sit for eight hours a day. (*Id.* at 187). The vocational expert opined the same way. (*Id.*) On this basis, the ALJ concluded that Heser was not disabled at Step 4 of the analysis because she could return to her past relevant work. (AR 26). He also alternatively found at Step 5 that she was not disabled because she could perform other jobs in the national economy as an insurance agent. (*Id.*) The ALJ erred in these determinations.

The ALJ's hypotheticals did not accurately set out the requirements of Heser's jobs as a billing or payroll clerk. In his hypotheticals, the ALJ posed a limit of six hours of sitting in one day. (*Id.*). In reality, Heser's prior work as a billing clerk and payroll clerk required her to sit eight hours a day. The Commissioner contends that the ALJ's hypotheticals were proper because they contained "only

19

credible limitations supported by the record evidence," because the ALJ set forth six hours of sitting in his hypothetical. (Doc. 12 at 23). This argument misses the mark. The point is that the ALJ never elicited any testimony from the vocational expert whether Heser could work at a job that required eight hours of sitting, not six.

All of the physicians involved in Heser's case, including Heser's treating physicians and also Disability Determination Services Richard Hurd, M.D., and medical records reviewer John Cey, M.D., agreed that Heser could not sit more than 6 hours a day. (AR 24-26). Sitting six hours a day is also consistent with the "light-sedentary" level of exertion determined by the ALJ. (AR 20). The ALJ never elicited any evidence that Heser could sit for eight hours; as a result, the hypothetical he posed to the vocational expert for a job requiring sitting eight hours a day and relied upon by the ALJ to satisfy Steps 4 and 5 was fatally flawed.

## IV. CONCLUSION

Based on this Court's review of the transcript, and affording Dr. Sears' opinion proper weight, the ALJ's opinion that Heser is not disabled is not supported by substantial evidence. When an ALJ's reasoning for rejecting the claimant's testimony and the treating physician's opinion are legally insufficient and it is clear from the record that the ALJ would be required to determine the claimant is disabled if he had credited the claimant's testimony, the case must be remanded for

calculation of benefits. *Orn*, 495 F.3d at 640. Such is the case here. This Court finds that the opinions of Heser's treating physician Dr. Sears and Heser's testimony must be credited. Thus, Heser has established that she is disabled.

IT IS ORDERED that the proposed Findings and Recommendations for disposition of this matter entered by United States Magistrate Judge Ostby (Doc. 14) are ADOPTED IN FULL.

IT IS FURTHER ORDERED that Plaintiff Sharon Heser's Motion for Summary Judgment (Doc. 11) is GRANTED.

IT IS FURTHER ORDERED that the Commissioner's decision is VACATED and this matter is REMANDED for payment of benefits consistent with this Order and the Findings and Recommendations hereby adopted. The Clerk of Court shall enter judgment in favor of Heser and close this case.

DATED this _17th_ day of November 2014.

Susan P. Watters

SUSAN P. WATTERS
U.S. DISTRICT COURT JUDGE